[Civ. No. 38200. First Dist., Div. Four. Dec. 2, 1976.]

TEACHERS MANAGEMENT AND INVESTMENT
CORPORATION et al., Plaintiffs and Appellants, v.
CITY OF SANTA CRUZ et al., Defendants and Respondents.

COUNSEL

Adams, Levin, Kehoe, Bosso & Sachs and Dennis J. Kehoe for Plaintiffs and Appellants.

Atchison, Haile & Haight and Neal R. Anderson for Defendants and Respondents.

OPINION

CHRISTIAN, J.—Teachers Management & Investment Corporation and Lighthouse Point, Ltd. (hereinafter collectively "plaintiffs" or "TMI") appeal from a judgment dismissing their complaint against the City of Santa Cruz. The complaint sought declaratory and injunctive relief on the theory that an initiative ordinance of the city was void. The judgment of dismissal was rendered after the court sustained without leave to amend, a general demurrer by the city.

It was alleged in the complaint that in 1967, the City Council of the City of Santa Cruz and the Board of Supervisors of Santa Cruz County established a joint convention study committee to determine whether a convention center project would be feasible for the area and, if so, to select the most appropriate site. The committee subsequently submitted a report supporting the project and recommending that the convention center facilities be located at Lighthouse Point (also known as Lighthouse Field) in the City of Santa Cruz.

Acting on the report, the city and the county entered into an agreement for the formation of the Santa Cruz City-County Community

and Convention Center Authority, sometimes referred to as the "Joint Powers Authority." This agreement anticipated that the Joint Powers Authority would develop and construct convention center facilities which would then be leased to, and operated and maintained by, the City of Santa Cruz. Under the agreement, the city would bear 75 percent of the cost and the county would bear the remaining 25 percent. Sometime thereafter, the city acquired 4.597 acres from the owners of the property known as Lighthouse Point; these 4.597 acres were later to be conveyed by the city to the Joint Powers Authority to be used for the public portion of the convention center facilities.

Late in 1968, the City of Santa Cruz rezoned the Lighthouse Point area to the "planned development" classification to permit development of a convention center and related facilities, including a hotel, a village, and other commercial and residential structures.

The Joint Powers Authority entered into an agreement with a private land developer whereby the Joint Powers Authority was to construct the convention center building and parking area and the developer was to develop the private facilities. The private and public development was to be concurrent.

TMI entered into negotiations with the owners of the remaining portions of Lighthouse Point for the purchase of that property and with the private developer who had contracted with the Joint Powers Authority for the development rights. Before the close of escrow, TMI obtained confirmations from the two governmental entities that Lighthouse Point would in fact be the location for the convention center project: the City Council of the City of Santa Cruz and the Board of Supervisors of the County of Santa Cruz adopted resolutions reaffirming Lighthouse Point as the convention center site and approving a proposed agreement between the Joint Powers Authority and TMI for the development of the site. On May 13, 1970, the Joint Powers Authority and TMI entered into a formal agreement whereby the Joint Powers Authority would construct the convention center building and appurtenances and TMI would develop the private facilities. TMI then acquired the bulk of the property in the Lighthouse Point area, as well as the development rights, at a cost in excess of $2 million. The Joint Powers Authority obtained from the federal government a commitment for a $1.64 million grant to aid the convention center project.

On June 4, 1974, the voters of the City of Santa Cruz approved Municipal Measure D, an initiative ordinance, which provided as follows:

"WHEREAS, Lighthouse Point and Lighthouse Field comprise a unique area within the City of Santa Cruz, and

"WHEREAS, the neighborhood adjacent to Lighthouse Point and Lighthouse Field is now a stable, quiet, and peaceful residential area, and

"WHEREAS, the construction and development of a convention center facility at Lighthouse Point or on Lighthouse Field, would have a substantial detrimental effect on the ecology and environment of Santa Cruz, and would have a substantial adverse effect on the residential areas adjacent to Lighthouse Point and Lighthouse Field, and

"WHEREAS, the Lighthouse Point and Lighthouse Field are inappropriate and unsuitable as a location for a convention center facility, and

"WHEREAS, we determine that the City of Santa Cruz should not own, operate, lease, or maintain a convention center facility at Lighthouse Point, or on Lighthouse Field.

"NOW THEREFORE

"The people of the City of Santa Cruz do ordain as follows:

"The City of Santa Cruz shall not own, lease, maintain, or operate a convention center facility on any real property located on the south half of Section 24, Township 11 South, Range 2 West, bounded by Pelton Avenue on the North and National Avenue on the West, and by the Pacific Ocean and Bay of Monterey, respectively, on the South and East, Assessor's Parcel Nos. 4-301-5, 9, 10, 11, 13 and 14, and 4-291-22 and 23, commonly known as Lighthouse Point, or Lighthouse Field."

The trial court took judicial notice of the following facts which do not appear on the face of the complaint:

1. The agreement creating the Joint Powers Authority, which also required the city to lease, maintain, and operate the convention center

after completion, contained a provision for termination should revenue bonds not be sold by September 1, 1971. That date was later extended to September 1, 1974.

2. The agreement between the Joint Powers Authority and TMI for concurrent development of the project contained a similar provision for termination should the revenue bonds be unsold, although no date was specified.

3. No bonds for the project were ever issued or sold.

4. On April 15, 1974, the Central Coast Regional Coastal Zone Conservation Commission denied the application of the Joint Powers Authority and TMI for a coastal development permit. Although the April 15 action was apparently not conclusive, a final denial was subsequently entered sometime after June 4, 1974, the date of the passage of Municipal Measure D.

5. On August 31, 1974, the federal government withdrew the grant that had been made to the Joint Powers Authority to aid in the construction of the convention center.

A complaint sufficient on its face may be subject to demurrer on the basis of facts judicially noticed. (Code Civ. Proc., § 430.30; *Javor* v. *State Board of Equalization* (1974) 12 Cal.3d 790, 796 [117 Cal.Rptr. 305, 527 P.2d 1153].) The city advanced, and the trial court adopted as an alternative ground of decision, the theory that facts judicially noticed in this case demonstrate that the cause is moot. The argument is that even if Municipal Measure D were declared invalid, plaintiffs will still be unable to develop Lighthouse Point as planned because the project has been disapproved by the coastal commission. It is also pointed out that the agreement creating the Joint Powers Authority has expired of its own terms by virtue of the failure to issue revenue bonds, and the city is no longer obligated to lease, maintain, or operate the proposed convention center. The agreement between the Joint Powers Authority and TMI has likewise expired and the United States has ended its participation in the project by withdrawing its grant.

■ An action for declaratory relief will be dismissed if it is shown that the controversy presented is or has become moot. (*Burke* v. *City etc. of San Francisco* (1968) 258 Cal.App.2d 32, 34 [65 Cal.Rptr. 539];

*Pittenger* v. *Home Savings & Loan Assn.* (1958) 166 Cal.App.2d 32, 36 [332 P.2d 399].) The present case continued to present a substantial controversy; the decision of the coastal commission reflected a concern with issues and matters wholly apart from the controversy between the plaintiffs and the defendants: that decision reflects a determination of the convention center project's propriety under the California Coastal Zone Conservation Act of 1972. While the commission's action has obviously affected plaintiffs' ability to proceed with the construction of the convention center complex, the commission's decision is conceivably subject to modification by the commission. Plaintiffs should not be precluded from seeking a determination as to their rights with respect to these defendants merely because another controversy, albeit related to the present one, has been decided against them.

■ The expiration of the two Joint Powers Authority agreements does not render the case moot. Plaintiffs' cause of action is not dependent solely upon the continued existence of those contracts. As plaintiffs point out, "Municipal Measure D prohibits . . . the acts stated therein without reference to a particular time frame or a particular Joint Powers Agreement." (Cf. *Paoli* v. *Cal. & Hawaiian Sugar etc. Corp.* (1956) 140 Cal.App.2d 854, 856 [296 P.2d 31].)

But the demurrer was sustained on the additional ground that the complaint did not state a cause of action. Plaintiffs contend that Municipal Measure D should be construed as a land use measure which unlawfully attempts to regulate a single landowner through the initiative process. The argument is that the measure must be treated as a land use or zoning ordinance because it accomplishes a "substantial interference" with the use of their property. (Citing *People's Lobby, Inc.* v. *Board of Supervisors* (1973) 30 Cal.App.3d 869, 873 [106 Cal.Rptr. 666], and *City of Escondido* v. *Desert Outdoor Advertising, Inc.* (1973) 8 Cal.3d 785, 790-791 [106 Cal.Rptr. 172, 505 P.2d 1012], both disapproved on other grounds, 13 Cal.3d 216-217 [118 Cal.Rptr. 146, 529 P.2d 570].) Municipal Measure D is claimed to be unconstitutional in that it purports to preclude the convention center project at Lighthouse Point without affording plaintiffs their due process right to a noticed hearing.

The court concluded from the face of the ballot proposition that it was not a land use ordinance. Plaintiffs argue that the court should have looked to the preamble of the measure, which included a recital that "Lighthouse Point and Lighthouse Field are inappropriate and unsuit-

able as a location for a convention center facility." Plaintiffs also contend that they should have been allowed to prove the measure's history and effect, in order to show that the ordinance is in fact a zoning or land use measure.

■ In general, a court should not look beyond the plain meaning of a statute when its language is clear and unambiguous, and there is no uncertainty or doubt as to the legislative intent. (*Wallace* v. *Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 360 [90 Cal.Rptr. 657].) As stated in *Livingston* v. *Heydon* (1972) 27 Cal.App.3d 672, 677 [104 Cal.Rptr. 83]: "It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear there can be no room for interpretation, and effect must be given to the plain meaning of the language." It has been held, however, that "The literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (*Golden* v. *City of Oakland* (1975) 49 Cal.App.3d 284, 288 [122 Cal.Rptr. 400], quoting *Silver* v. *Brown* (1966) 63 Cal.2d 841, 845 [48 Cal.Rptr. 609, 409 P.2d 689].)

Municipal Measure D merely provides that the City of Santa Cruz shall not "own, lease, maintain, or operate a convention facility" on the property commonly known as Lighthouse Point or Lighthouse Field. The clear and unambiguous language of the statute does not impose or purport to impose any zoning or land use restrictions; plaintiffs were free to construct a convention center complex at Lighthouse Point prior to the passage of Municipal Ordinance D; subject to coastal zone restrictions, they continue to be free to do so after its enactment. The intent of the people of Santa Cruz in passing Municipal Measure D, as expressed in the plain language of the ordinance, was simply to preclude the city's participation in the convention center project. While it is true that the ultimate desire of the supporters of Municipal Measure D may have been to halt development of a convention center at Lighthouse Point completely, that is a question of legislative motive of which the courts may not take cognizance unless no rational basis for the ordinance can be found. (*Simpson* v. *City of Los Angeles* (1935) 4 Cal.2d 60, 65 [47 P.2d 474]; *Melton* v. *City of San Pablo* (1967) 252 Cal.App.2d 794, 798 [61 Cal.Rptr. 29].) That is not the case here. To go beyond the plain meaning of Municipal Measure D would be to create ambiguity where none in fact exists.

As to plaintiffs' claim that the court denied them an opportunity to present evidence of the ordinance's true intent and effect, it need only be noted that the construction to be given a municipal ordinance is generally a question of law. (*National Exhibition Co.* v. *City and County of San Francisco* (1972) 24 Cal.App.3d 1, 9 [100 Cal.Rptr. 757].) Since the meaning of the ordinance was thus a matter for judicial interpretation, nothing would have been gained by proceeding to trial on this issue.

Plaintiffs contend that Municipal Measure D is unconstitutional in that it deprives them of a property right without due process of law. ■ But the decision of a city to build and operate a public structure is unquestionably legislative in nature (*Duran* v. *Cassidy* (1972) 28 Cal.App.3d 574, 581-582 [104 Cal.Rptr. 793]); thus constitutional requirements of notice and hearing are inapplicable. (*San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 217 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973].)

Plaintiffs also alleged that Municipal Measure D is invalid and unconstitutional because it unlawfully impacted upon both federal and county participation in the convention center project. Plaintiffs argue that once the United States government became involved in the project through its commitment to grant $1.64 million, and after all the necessary contracts and agreements were entered into, the city was without power to regulate that federal participation or frustrate its objectives. It is also contended that Municipal Measure D constitutes an unlawful regulation of the affairs of the County of Santa Cruz in that the agreement creating the Joint Powers Authority was deemed to be for the benefit of the citizens of both the City and County of Santa Cruz. ■ But Municipal Measure D regulates only the activities of the city; it neither regulates nor precludes those entities from building or operating a convention center at Lighthouse Point.

Plaintiffs also requested the court to declare Municipal Measure D invalid and to enjoin its enforcement on the ground that the ordinance constitutes an unconstitutional impairment of the obligation of contracts. The contracts alleged to have been impaired are: the agreement between the City and County of Santa Cruz establishing the Joint Powers Authority; the agreement between the Joint Powers Authority and plaintiffs for the concurrent development of the convention center facilities; the contracts entered into by the plaintiffs with the former owners of Lighthouse Point for the sale of the property and with the

original developers for the right to develop the site. Plaintiffs contend that they placed great reliance upon these contracts and upon the resolutions of the defendant city council which approved the proposed agreement between plaintiffs and the Joint Powers Authority and confirmed Lighthouse Point as the location of the convention center. Plaintiffs argue that the city cannot now undo those agreements, either through action of the city council or through the initiative process. The allegation concerning private contracts between the plaintiffs and former owners and developers of Lighthouse Point do not include any facts which would lead to the conclusion that the contracts were dependent upon the city's maintaining its position with respect to the convention center project. Moreover, the people of Santa Cruz were not powerless to act through the initiative to change a policy of their city. (Cf. *Harbor Center Co.* v. *Richmond* (1918) 38 Cal.App. 315 [176 P. 50].) ■ The existence of binding agreements cannot prevent a public entity from abandoning or rescinding its plans to proceed with a public works project, although the change in policy may result in the entity's being liable for breach of contract. (*Lavine* v. *Jessup* (1958) 161 Cal.App.2d 59, 68-69 [326 P.2d 238].) In the present case, plaintiffs have neither alleged a breach of contract nor sought any damages for breach of contract.

Finally, plaintiffs contend that the voters of Santa Cruz were barred from enacting Municipal Measure D by the doctrines of laches and estoppel. Plaintiffs allege that they were invited by the city to invest in the convention center project, and claim to have substantially changed their position by expending large sums of money in reliance on the city council's representations. ■ Laches is an affirmative defense to a suit in equity (see 30 Cal.Jur.3d, Equity, § 37 et seq.); the doctrine has no application to the effectiveness of a statute or ordinance. Equitable estoppel has been applied to governmental entities when required by justice and right, but an estoppel will not be applied against the government if to do so would substantially nullify " 'a strong rule of policy, adopted for the benefit of the public, . . .' " (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423], and authorities there cited.) The right of the people to act through the initiative is a policy which must be vindicated to promote the democratic process. (*Farley* v. *Healey* (1967) 67 Cal.2d 325, 328 [62 Cal.Rptr. 26, 431 P.2d 650]; *Bayless* v. *Limber* (1972) 26 Cal.App.3d 463, 468 [102 Cal.Rptr. 647].) As stated in *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 696 [96 Cal.Rptr. 165]: "The free exercise of the right of initiative reserved to the people may not be circumscribed except by the

people of the state acting through the Legislature." (Also see *Martin v. Smith* (1959) 176 Cal.App.2d 115, 117 [1 Cal.Rptr. 307].) To allow plaintiffs to frustrate that power by raising an estoppel would be to contravene the strong policy of this state favoring the use of the initiative.

We conclude that plaintiffs have failed to allege facts sufficient to show that Municipal Measure D is invalid. ■ In general, if a complaint for declaratory relief alleges the existence of an actual controversy (as does the complaint here), the court should not sustain a general demurrer on the theory that any declaration would necessarily be adverse to the plaintiff. (*Safeway Stores, Inc.* v. *Royal Indem. Co.* (1971) 21 Cal.App.3d 44, 47 [98 Cal.Rptr. 234]; *Jefferson Incorporated* v. *City of Torrance* (1968) 266 Cal.App.2d 300 [72 Cal.Rptr. 85]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 730, pp. 2350-2351.) But if it is clear that the order sustaining the demurrer amounted to a correct decision on the legal merits of the case, a reversal is not required; instead, the appellate court may simply modify the judgment so as to declare that plaintiff was entitled to no relief. (*Berkeley* v. *Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961, 965 [115 Cal.Rptr. 540]; *California State Employees' Assn.* v. *Flournoy* (1973) 32 Cal.App.3d 219, 240 [108 Cal.Rptr. 251], cert. den. 414 U.S. 1093 [38 L.Ed.2d 550, 94 S.Ct. 724].)

The purported appeal from the order sustaining the demurrer is dismissed. The judgment as to the cause of action for declaratory relief is modified to declare that plaintiffs are not entitled to a determination that the initiative measure is invalid. As so modified, the judgment is affirmed. Respondents will recover costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied December 28, 1976.