66 Cal.Rptr.3d 258 (2007)
155 Cal.App.4th 645
Javier R. GUZMAN et al., Plaintiffs and Appellants,
v.
COUNTY OF MONTEREY et al. Defendants and Respondents.
No. H030647.
Court of Appeal of California, Sixth District.
September 25, 2007.
*260 Sullivan Hill Lewin Rez & Engel, Brian L. Burchett, San Diego, Law Offices of Richard H. Rosenthal, Richard H. Rosenthal, Los Angeles, Selden Law Firm Lynde Selden, II, San Diego, for Plaintiffs/Appellants Javier R. Guzman et al.
County of Monterey et al., County Counsel, Charles J. McKee, Patrick McGreal, Deputy County Counsel, for Defendants/Respondents.
*259 PREMO, J.
Plaintiffs are 80 men, women, and children who were residents of Jensen Camp Mobile Home Park (Jensen Camp) in Monterey County between 1995 and 2003. Plaintiffs allege that Jensen Camp water was contaminated with dangerously high levels of naturally occurring fluoride since at least 1995 but that plaintiffs were not told about the contamination until 2003. Plaintiffs sued Rick Pinch who was Jensen Camp's owner and water system operator, the County of Monterey (County), and Monterey County Health Department. Plaintiffs appeal from judgment entered after the trial court sustained without leave to amend County's demurrer to the third amended complaint.[1] .
The issue on appeal is whether provisions of the California Safe Drinking Water Act (Health & Saf.Code, § 116270 et seq.) impose upon County a mandatory duty under Government Code section 815.6 to review and respond to water quality monitoring reports submitted by water systems for which County is responsible.
We conclude that regulations implementing the Safe Drinking Water Act imposed a mandatory duty requiring County to perform a monthly review of all water quality monitoring reports it received and to direct the water system operators to notify water users when those reports indicated contamination. No statutory immunity protects County from liability for breach of that duty. Plaintiffs' third amended complaint sufficiently alleged the elements necessary for liability under Government Code section 815.6. Accordingly, we reverse the judgment.

I. Background
"On appeal from dismissal following a sustained demurrer, we take as true all well-pleaded factual allegations of the complaint." (Haggis v. City of Los Angeles (2000) 22 Cal.4th 490, 495, 93 Cal. Rptr.2d 327, 993 P.2d 983 (Haggis).) Plaintiffs' third amended complaint contains the following factual allegations.
Defendant Rick Pinch owned Jensen Camp from November 1995 through August 2003. Water for the Jensen Camp residents came from a community water system that Pinch operated. County was the "local primacy agency" responsible for ensuring that public water systems in its jurisdiction, such as the one at Jensen Camp, were operated in compliance with *261 the law.[2] Pinch was not a knowledgeable water system operator. He depended upon County for direction and advice concerning operation of the Jensen Camp water system.
The Safe Drinking Water Act requires water operators like Pinch to monitor the quality of their water and to notify the local primacy agency and the water consumers whenever certain substances in the water exceed a specified maximum contaminate level (MCL). Pinch monitored the Jensen Camp water periodically. Monitoring reports show that in 1995 the level of fluoride in the water was 7.6 mg/L; in 1999 it was 8.5 mg/L; and in 2002 it was 5.8 mg/L. The MCL for fluoride is 2.0 milligrams per liter (mg/L). Water containing fluoride in excess of 2.0 mg/L poses a risk of injury to the persons drinking it. Thus, each of the water monitoring reports showed that the Jensen Camp water contained unsafe levels of fluoride. County received copies of these monitoring reports but prior to 2003 County employees did not review them and did not direct Pinch to notify plaintiffs that their drinking water was unsafe. It was not until April 2003 that County imposed a compliance order under which Pinch acknowledged the contamination and agreed to make repairs to the water system.
Plaintiffs Javier R. Guzman and Tosha F. Djirbandee-Ramos, who were residents of the camp at the time, purchased Jensen Camp from Pinch in or about August 2003. The new owners did not become aware of the fluoride problem until after the sale. Upon learning of the fluoride contamination, they notified the other tenants and provided bottled water while they investigated repairs to the system.
Plaintiffs filed this lawsuit against Pinch and County. After the trial court sustained County's first demurrer with leave to amend, plaintiffs filed a third amended complaint, which contains two causes of action against County for negligence. One cause of action alleges that County breached a mandatory duty within the meaning of Government Code section 815.6. The other cause of action is based upon allegations of a special relationship between plaintiffs and County.
County again demurred, claiming there was no mandatory duty and no special relationship and that County was immune from liability for the acts alleged. The trial court sustained the demurrer without leave to amend. There followed a judgment of dismissal as to County only. Plaintiffs have timely appealed, challenging the trial court's ruling only with respect to the cause of action for negligence under Government Code section 815.6.

II. Standard Of Review
"A demurrer properly is [sustained] when the pleadings fail to state facts sufficient to constitute a cause of action. (Code Civ. Proc, § 430.10, subd. (e).) In determining if a complaint is subject to demurrer, the court considers not only the face of the complaint, but any facts judicially noticed. (Teachers Management & Inv. Corp. v. City of Santa Cruz (1976) 64 Cal.App.3d 438, 444[, 134 Cal.Rptr. 523].) ... Where, as here, a demurrer has been granted without leave to amend, the `reviewing court gives the *262 complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citation.] The court does not, however, assume the truth of the contentions, deductions or conclusions of law.'" (Washington v. County of Contra Costa (1995) 38 Cal.App.4th 890, 895, 45 Cal.Rptr.2d 646 (Washington).) We exercise our independent judgment about whether the pleading states a cause of action as a matter of law. (City of Morgan Hill v. Bay Area Air Quality Management Dist. (2004) 118 Cal.App.4th 861, 869-870, 13 Cal.Rptr.3d 420.) "We independently construe statutory law, as its interpretation is a question of law on which we are not hound by the trial court's analysis." (Id. at p. 870, 13 Cal.Rptr.3d 420.)

III. Legal Framework
"In California, governmental tort liability must be based on statute." (Washington, supra, 38 Cal.App.4th at pp. 895-896, 45 Cal.Rptr.2d 646; Gov.Code, § 815.) Government Code section 815.6 is one such statute. It provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Thus, the statute sets forth a three-pronged test for determining whether liability may be imposed on a public entity: "`(1) an enactment must impose a mandatory, not discretionary, duty ...; (2) the enactment must intend to protect against the kind of risk of injury suffered by the party asserting [Government Code] section 815.6 as a basis for liability ...; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered.'" (Becerra v. County of Santa Cruz (1998) 68 Cal.App.4th 1450, 1458, 81 Cal.Rptr.2d 165.) Government Code section 815.6 creates a private right of action so long as the predicate enactment supplies these elements of liability. (Haggis, supra, 22 Cal.4th at p. 499, 93 Cal.Rptr.2d 327, 993 P.2d 983.) An "enactment" includes "a constitutional provision, statute, charter provision, ordinance or regulation." (Gov.Code, § 810.6.)
To satisfy the first prong of the Government Code section 815.6 test for liability, a plaintiff must specifically allege the enactment that creates the mandatory duty. (Washington, supra, 38 Cal.App.4th at pp. 896-898, 45 Cal.Rptr.2d 646.) The enactment at issue must be obligatory. "[I]t must require, rather than merely authorize or permit, that a particular action be taken or not taken." (Haggis, supra, 22 Cal.4th at p. 498, 93 Cal.Rptr.2d 327, 993 P.2d 983.) It is not enough that the public entity have an obligation to perform a function if the function itself involves the exercise of discretion. (Id. at pp. 498-499, 93 Cal.Rptr.2d 327, 993 P.2d 983.) "An enactment creates a mandatory duty if it requires a public agency to take a particular action. [Citation.] An enactment does not create a mandatory duty if it merely recites legislative goals and policies that must be implemented through a public agency's exercise of discretion. [Citation.] The use of the word `shall' in an enactment does not necessarily create a mandatory duty." (County of Los Angeles v. Superior Court (2002) 102 Cal.App.4th 627, 639, 125 Cal.Rptr.2d 637.)
"Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts." (Creason v. Department of Health Services (1998) 18 Cal.4th 623, 631, 76 Cal.Rptr.2d 489, 957 *263 P.2d 1323.) In interpreting a statute, "our first task ... is to ascertain the intent of the Legislature so as to effectuate the purpose of the law," and "[i]n determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.... The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (DynaMed, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1386-1387, 241 Cal.Rptr. 67, 743 P.2d 1323.)

IV. Discussion

A. Mandatory Duty
In their third amended complaint, plaintiffs cite Health and Safety Code section 116325 and title 22, sections 64256, 64257, 64432, 64464.3, and 64480 of the California Code of Regulations, as the basis for their claim of negligence.[3] Plaintiffs claim that under these enactments County had a mandatory duty to receive Pinch's water quality reports, review those reports, report water quality violations to the DHS, and notify Pinch of his ongoing monitoring obligations. Implicit in this scheme, they claim, is the duty to insure that Pinch give notice of the contamination to the consumers.
County maintains that plaintiffs have not adequately identified specific enactments that make any particular acts mandatory. According to County, plaintiffs would have us conclude, contrary to the settled law, that the statutory scheme as a whole contains the implied mandatory duty to protect plaintiffs. County further argues that, to the extent plaintiffs have identified duties imposed by the enactments, those duties are not specific enough to be deemed mandatory duties.
Turning to the enactments plaintiffs have specified, we find that Health and Safety Code section 116325 does not directly impose a mandatory duty. That section provides that the DHS "shall be responsible for ensuring that all public water systems are operated in compliance with this chapter and any regulations adopted hereunder ..." (Health & Saf. Code, § 116275, subd. (b).) As allowed by Health and Safety Code section 116330, DHS delegated primary responsibility for administration and enforcement of the chapter to County. Thus, County had primary responsibility for ensuring that the Jensen Camp water system was operated in compliance with the Safe Drinking Water Act. That said, the section imposes no duty to perform any particular act but merely gives County general oversight of certain public water systems.
Sections 64480, 64432, and former section 64464.3 do not directly impose any particular mandatory duty upon County, either. Section 64480 provides that the "water system" compile and deliver a consumer confidence report publishing water monitoring data for the preceding year. Section 64432 requires "all public water systems" to monitor for inorganic chemicals, including fluoride, once during the year designated by the primacy agency (id., at subd. (b)(1)) and to take quarterly samples when monitoring results show a trend toward higher levels (id., at subd. (b)(2)). Subsection (f) of section 64432 requires *264 the water system to inform the primacy agency within 48 hours when the chemicals in a sample exceed the MCL and to begin quarterly monitoring in the next quarter after the violation occurred. Former section 64464.3 required the "water supplier" to notify the primacy agency and the consumers whenever the drinking water contained inorganic chemicals such as fluoride in levels exceeding the MCL. None of these enactments is directed to the primacy agency and, therefore, imposes no particular duty directly upon it. Thus, as with Health and Safety Code section 116325, these sections, standing alone, cannot form the basis for liability under Government Code section 815.6.
Plaintiffs also cite section 64256 as another basis for liability. Subsection (e) of section 64256 is directed to the primacy agency,[4] although the first part of it is not mandatory. That part provides that a "system shall be established by the local primacy agency to assure that the water quality monitoring data submitted by the small water systems is routinely reviewed for compliance with the requirements of Title 22, Division 4, Chapters 15, 17, and 17.5 of the California Code of Regulations." (§ 64256(e).) This requirement does not specify the type of system the agency must establish and, to that extent, it is not a mandatory duty. But that is not the end of it. Section 64256(e) goes on: "The monitoring reports shall be reviewed each month for each small water system and the data entered into the data management system at least monthly." Further, section 64256(a), also cited by plaintiffs, provides that the primacy agency "shall notify each small water system under its jurisdiction in writing of the monitoring requirements for that system pursuant to Title 22, Division 4, Chapters 15, 17, and 17.5 of the California Code of Regulations. The notice shall identify the specific contaminants to be monitored, the type of laboratory analyses required for each contaminant, the frequency of sampling and any other sampling and reporting requirements applicable to that system." We have no difficulty concluding that these sections impose particularized mandatory duties-to conduct a monthly review of monitoring reports, and to notify the water system of its monitoring and reporting requirements. *265 Section 64257 also sets forth particular mandatory duties in that it requires the primacy agency to make specified reports to the DHS on a monthly or quarterly basis.
We agree with plaintiffs that, even though the enactments do not explicitly require County to instruct the water system to notify the water consumers when contamination occurs, that duty is implied in the statutory scheme. Although it is the general rule that in order to state a cause of action under Government Code section 815.6, the plaintiff must specify a particular enactment that requires the public entity to perform a particular act, a mandatory duty may sometimes be implied. That is because in analyzing "whether the statutory language shows any legislative intent to create a mandatory duty enforceable by a private plaintiff," we "consider the particular clauses cited in the context of the whole statutory scheme." (MacDonald v. State of California (1991) 230 Cal.App.3d 319, 330, 281 Cal.Rptr. 317, citing Nunn v. State of California (1984) 35 Cal.3d 616, 624-625, 200 Cal.Rptr. 440, 677 P.2d 846.) For example, in Alejo v. City of Alhambra (1999) 75 Cal.App.4th 1180, 1183-1184, 89 Cal. Rptr.2d 768 (Alejo), a father reported to the police his concern that his son was being physically abused but the police did not investigate or take any other action. The child was thereafter gravely injured by his mother's boyfriend. The appellate court held that Penal Code section 11166, subdivision (a), imposes two mandatory duties on a police officer who receives an account of child abuse: to investigate the account and to take further action when reasonably necessary. (Alejo, supra, 75 Cal.App.4th at p. 1186, 89 Cal.Rptr.2d 768.) Even though the statute does not use the term "investigate," "it clearly envisions some investigation in order for an officer to determine whether there is reasonable suspicion to support the child abuse allegation and to trigger a report to the county welfare department and the district attorney" as required by other provisions of the statutory scheme. (Ibid.) The duty to take further action included reporting the abuse to a child protective agency and sending a written report concerning the incident. (Ibid.) The statutory language, prior cases, and public policy all supported the conclusion that both duties were mandatory. (Id. at pp. 1186-1187, 89 Cal.Rptr.2d 768.)
The duty to review the water quality reports and to report compliance violations to DHS presumes that the primacy agency will evaluate the reports to identify violations. Further, although the water system had the direct duty to notify its water consumers of unacceptable levels of contaminants, County had the duty, under section 64256(a), to notify the water system of the requirements specified in title 22, division 4, chapter 15, which, at all pertinent times, contained former section 64464.3. As we noted above, former section 64464.3 required the water system to notify its customers of water quality violations. Thus, at minimum, County had the duty to inform Pinch of his responsibility to notify his water customers that the water was contaminated.
The duty implied by section 64464.3 went beyond merely alerting the water system to the notification requirement. Former section 64464.3 provided, "Unless otherwise directed by [the local primacy agency], the water supplier shall notify [the local primacy agency] and the persons served by the water system" whenever the water quality or the water supplier's testing or treatment is out of compliance with the requirements of the Safe Drinking Water Act. (Former § 64464.3(a).) Water customers were to be notified according to *266 the methods described in former section 64464.1. (Former' § 64464.3(b).) Former section 64464.1(a) specified: "When a water supplier is required to provide notice pursuant to section 64464.3, or 64464.6, or 64465, then the notice shall be provided using one or more of the following methods as directed by [the local primacy agency] pursuant to sections 64464.3, 64464.6, or 64465." (Italics added.) The regulation went on to list the acceptable notification methods, such as publication in a newspaper of general circulation, notification by mail, and notification by hand delivery. (Former § 64464.1(a)(2), (4), (5).) Former section 64464.1 also specified that the primacy agency "may waive the requirement" for mail or hand delivery "if it determines that the violation" has been corrected. (Former § 64464.1(a)(4), (5).) Finally, former section 64464.3(b)(1)(D) provided, "If the [local primacy agency] finds that, based on the degree of health risk and the nature of the population served, additional notification is necessary, then it may direct the community water system to carry out such notification required to adequately alert the public to the risk."
The system described in former section 64464.1 and 64464.3 unquestionably presumed that the local primacy agency would respond to reports of contamination and direct the water system to notify the persons served and to specify the manner in which notification was to be given. This is not a case like Washington, supra, 38 Cal. App.4th at page 896, 45 Cal.Rptr.2d 646, in which the plaintiffs argued that the statutory scheme as a whole imposed a general duty to protect them. Here, plaintiffs identify specific enactments imposing particular duties upon the public entity. It would defeat the purpose of the law, which is "to ensure that the water delivered by public water systems of this state shall at all times be pure;, wholesome, and potable," (Health & Saf.Code, § 116270, subd. (e)), if these explicit duties did not also include the duty to direct the water system to properly notify its water consumers when their drinking water is contaminated.
We conclude that County had the mandatory duty, under sections 64256 and former sections 64464.3 and 64464.1, to review water quality monitoring reports, to direct the water system to notify its customers that the water was contaminated, and to specify the form and manner in which that notification is to take place. We do not take the further step of holding that the agency had a mandatory duty to insure that the notice was given or that it was given in any particular manner. Even though the regulatory scheme clearly implies that the primacy agency will continue to oversee a noncompliant water system and insure that the water system complies with the directives it is given, the enactments do not specify a particular act by which an agency must insure compliance and, therefore, cannot form the basis for a private tort action under Government Code section 815.6.

B. Persons Protected by the Law
Having concluded that County had a mandatory duty to undertake monthly reviews of water quality monitoring reports, to correctly inform Pinch of the monitoring requirements applicable to the Jensen Camp water system, and to direct Pinch to give notice to his water customers when the water was out of compliance with the state's safe drinking water standards, we must next determine whether these duties were intended to protect against the physical and emotional injuries plaintiffs claim to have suffered.
County points out that in enacting the Safe Drinking Water Act, the Legislature's intent was to "give the establishment of drinking water standards and public health *267 goals greater emphasis and visibility...." (Health & Saf.Code, § 116270, subd. (g).) According to County, this means that the Legislature intended County to function in an advisory and record keeping capacity only and that the responsibility for providing safe and clean drinking water is placed solely upon the water systems. We disagree. Even if County's duties are purely advisory or administrative, the overall intent of the regulatory program is to "provide for the orderly and efficient delivery of safe drinking water within the state." (Id., at subd. (g), italics added.) The Legislature's broader declaration of intent is that the Safe Drinking Water Act "is intended to ensure that the water delivered by public water systems of this state shall at all times be pure, wholesome, and potable." (Id., at subd. (e).) The particular failures of which plaintiffs complain may be related to the orderly and efficient recordkeeping envisioned by the enactment, but those failures were unquestionably part of a scheme intended to protect the health and well being of water consumers such as plaintiffs.

C. Causation
The third prong of the testcausation is easily disposed of. Causation is a question of fact. (Alejo, supra, 75 Cal.App.4th at p. 1189, 89 Cal.Rptr.2d 768.) The facts alleged in the third amended complaint are that Pinch relied upon County to inform him of his duties as a water operator. Pinch submitted water samples to County in 1995, 1999, and 2002 and all three samples showed that fluoride in the water greatly exceeded the MCL, which should have prompted County to direct Pinch to notify plaintiffs of the contamination. Plaintiffs allege that County did not review Pinch's reports and, therefore, did not order Pinch to notify plaintiffs of the contamination. As a result plaintiffs "unknowingly consumed contaminated drinking water from at least November 1995," resulting in physical and emotional injuries. This is a sufficient link, for pleading purposes, between the mandatory duty and the injury alleged. (Ibid.)

D. Immunity
In a tort action against a public entity, the question of duty is a threshold issue. The next question is whether any statutory immunity applies to bar plaintiffs' negligence cause of action. (Davidson v. City of Westminster (1982) 32 Cal.3d 197, 202, 185 Cal.Rptr. 252, 649 P.2d 894.) County contends that it is immune under Government Code sections 818.2, 820.4, 821, 818.4, 821.2, and 820.8. None of these immunities is applicable.
Government Code section 818.2 provides that a public entity "is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." This section was intended to provide immunity for legislative and quasi-legislative action and to protect the exercise of discretion by law enforcement officers in carrying out their duties. (See Cal. Law Revision Com. com. to Gov.Code, § 818.2.) The companion section, Government Code section 821, extends the same immunity to the public employee. To apply these sections to immunize County from liability for breach of a mandatory duty "would completely eviscerate Government Code section 815.6 which specifically provides for liability of the public entity for injuries resulting from a failure to carry out a mandatory duty imposed by a public enactment." (Elton v. County of Orange (1970) 3 Cal.App.3d 1053, 1059, 84 Cal.Rptr. 27; see also Alejo, supra, 75 Cal.App.4th at p. 1194, 89 Cal.Rptr.2d 768.)
Government Code section 820.4 extends immunity to a public employee *268 "for his [or her] act or omission, exercising due care, in the execution or enforcement of any law...." This statute does not warrant dismissal of plaintiffs' negligence claims because there is a question of fact as to whether County exercised "due care" in reviewing and responding to Pinch's water quality reports. (See Ogborn v. City of Lancaster (2002) 101 Cal.App.4th 448, 462, 124 Cal.Rptr.2d 238.)
The immunity provided by Government Code section 818.4 pertains to injuries caused by the public entity's "issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Government Code: section 821.2 extends the same immunity to the public employee. These sections do not apply here because there was no discretionary licensing decision. The wrongful act was the failure to comply with the mandatory duty to review water quality reports and to instruct the water system to notify the water customers.
Finally, Government Code section 820.8, which provides that a public employee "is not liable for an injury caused by the act or omission of another person" is inapplicable because the injury is alleged to have been caused by the public employee's negligence. Indeed, Government Code section 820.8 concludes, "Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission."

V. Disposition
The judgment is reversed and remanded with directions to the trial court to vacate its order sustaining the demurrer of defendant County of Monterey and to enter a new order overruling the demurrer.
WE CONCUR: RUSHING, P.J., and ELIA, J.
NOTES
[1] Monterey County Health Department, a County agency, was not treated as a separate entity below. Accordingly, we refer to both defendants simply as County.
[2] Health and Safety Code section 116325 provides that the California Department of Health Services (DHS) "shall be responsible for ensuring that all public water systems are operated in compliance with [the California Safe Drinking Water Act]...." As allowed by Health and Safety Code section 116330, the DHS may delegate primary responsibility for administration and enforcement of the Safe Drinking Water Act to a "local primacy agency."
[3] Further unspecified section references are to title 22 of the California Code of Regulations.
[4] Section 64256 provides in full:

"(a) The local primacy agency shall notify each small water system under its jurisdiction in writing of the monitoring requirements for that system pursuant to Title 22, Division 4, Chapters 15, 17, and 17.5 of the California Code of Regulations. The notice shall identify the specific contaminants to be monitored, the type of laboratory analyses required for each contaminant, the frequency of sampling and any other sampling and reporting requirements applicable to that system.
"(b) The local primacy agency shall ensure that each small water system under its jurisdiction complies with the sample siting plan requirements of section 64422.
"(c) The local primacy agency shall establish a tracking system to assure that all required sampling and laboratory analyses are completed and reported by the small water systems pursuant to Title 22, Division 4, Chapters 15, 17, and 17.5 of the California Code of Regulations. The tracking system shall include the date the sample was collected, the type or purpose of the sample, and the laboratory result.
"(d) An ongoing record of the status of compliance with monitoring and reporting requirements of California Code of Regulations, Title 22, Division 4, Chapters 15, 17, and 17.5 of each small water system shall be maintained by the local primacy agency.
"(e) A system shall be established by the local primacy agency to assure that the water quality monitoring data submitted by the small water systems is routinely reviewed for compliance with the requirements of Title 22, Division 4, Chapters 15, 17, and 17.5 of the California Code of Regulations. The monitoring reports shall be reviewed each month for each small water system and the data entered into the data management system at least monthly."