[No. B130088. Second Dist., Div. Seven. Oct. 27, 1999.]

ALEC ALEJO, a Minor, etc., Plaintiff and Appellant, v.
CITY OF ALHAMBRA, Defendant and Respondent.

**COUNSEL**

Ajalat & Ajalat, Gregory M. Ajalat and Stephen P. Ajalat for Plaintiff and Appellant.

Leland C. Dolley, City Attorney; Brian A. Pierik; and Elizabeth R. Feffer for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—In 1973, Dr. Vincent Fontana wrote a book on child abuse entitled, Somewhere a Child Is Crying. The complaint in this case asks: "Is anyone listening?" In sustaining a demurrer to the complaint, the trial court held a city is not liable when its police officers fail to investigate and report their reasonable suspicions a child has been the victim of physical abuse and, as a result, the child suffers further abuse. We reverse.

### FACTS AND PROCEEDINGS BELOW

For the purposes of this appeal, we accept as true the properly pleaded factual allegations of the complaint. (*Lazar* v. *Superior Court* (1996) 12 Cal.4th 631, 635 [49 Cal.Rptr.2d 377, 909 P.2d 981].)

Three-year-old Alec Alejo resided with his mother and her live-in boy-friend, Mike Gonzalez, in the City of Alhambra. On May 18, 1997, Hector Alejo, Alec's father, became concerned when he observed Alec had severe facial bruising to and surrounding the area of his left eye. He questioned both Alec and his mother, Jamie Clark, about the injury but their explanations did not dispel his concern.

Three days later, on the evening of May 21, 1997, Hector received a telephone call from a neighbor and close friend of Clark's, who advised Hector that Clark and Gonzalez were using drugs and Gonzalez was physically beating and abusing Alec. The caller also inquired whether Hector had seen Alec's recent "black eye."

Immediately after receiving the telephone call, Hector went to the Alhambra Police Department and reported to "Officer Doe"[1] his knowledge about the physical and mental abuse being inflicted upon Alec by Gonzalez. He informed the officer of Alec's black eye and the fact he had just received a telephone call alerting him Clark and Gonzalez were using drugs and Gonzalez was in the process of physically abusing Alec. Hector, concerned for his child's safety, described the location where Alec and his mother lived, offered to take the police there and requested the police immediately go and investigate the matter.

Despite receiving this report of abuse from Alec's father, the Alhambra Police Department and Officer Doe, without reasonable care, diligence,

---

[1] The complaint alleges plaintiff is presently unaware of the true name of this officer.

justification or regard for Alec's safety, failed to conduct any investigation into whether Alec was being abused and failed to prepare an internal report or cross-report to other governmental agencies and offices concerning Alec's possible abuse.

Six weeks after Hector reported Alec's abuse to the Alhambra police, Alec was subjected to a severe, violent and unlawful beating by Gonzalez. This beating caused Alec serious physical injuries as well as great mental, emotional and physical suffering. As a result of this abuse, Alec has suffered total and permanent disability.

Alec brought this action against the City of Alhambra, its employee Officer Doe, and Mike Gonzalez. The complaint alleges negligence on the part of the city and Officer Doe in failing to investigate or report a reasonable suspicion of child abuse as mandated by Penal Code section 11164 et seq.[2]

The city demurred on the grounds its police department and officers had no special duty to protect Alec from child abuse, the reporting and investigation of child abuse by law enforcement is a discretionary function, its police department and officers are immune from liability for their failure to act and, in any event, their failure to act was not the cause of Alec's injuries. The trial court sustained the city's demurrer without leave to amend and entered judgment dismissing the city from the action. Alec filed a timely appeal.

DISCUSSION

I. *The Complaint States a Cause of Action for Negligence Under the Theory of Negligence Per Se.*

■ For the reasons explained below, we hold Alec's complaint states a cause of action under the doctrine of negligence per se based on the Child Abuse and Neglect Reporting Act (art. 2.5, §§ 11164-11174.3).

■ To state a cause of action under the negligence per se doctrine, the plaintiff must plead four elements: (1) the defendant violated a statute or regulation, (2) the violation caused the plaintiff's injury, (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent, and (4) the plaintiff was a member of the class of persons the

---

[2]All future statutory references are to the Penal Code unless otherwise specified.

statute or regulation was intended to protect. (Evid. Code, § 669.)[3] Only the first two elements of the negligence per se doctrine are at issue in this appeal. It is beyond dispute the mental and physical abuse three-year-old Alec allegedly suffered at the hands of Gonzalez was exactly the type of injury the California Legislature intended to prevent in enacting the Child Abuse and Neglect Reporting Act. (§ 11164, subd. (b).)[4]

A. *Officer Doe Had a Duty Under Section 11166 to Investigate and Report a Reasonable Suspicion of Child Abuse.*

■ We acknowledge, as a general rule one has no duty to come to the aid of another. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].) Accordingly, there is no duty owed by police to individual members of the general public because "[a] law enforcement officer's duty to protect the citizenry is a general duty owed to the public as a whole." (*Von Batsch* v. *American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1121 [222 Cal.Rptr. 239].) Therefore, absent a special relationship or a statute creating a special duty, the police may not be held liable for their failure to provide protection. (*Id.* at p. 1122.)

Section 11166, subdivision (a) creates such a duty.[5] This statute provides in relevant part any "employee of a child protective agency . . . who has knowledge of or observes a child, in his or her professional capacity, or within the scope of his or her employment, whom he or she knows or reasonably suspects has been the victim of child abuse *shall* report the

---

[3]Government Code section 815.6 applies the negligence per se doctrine to public entities. It provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Courts have recognized that as a practical matter the standard for determining whether a mandatory duty exists is "virtually identical" to the test for an implied statutory duty of care under Evidence Code section 669. (*Tirpak* v. *Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639, 646 [232 Cal.Rptr. 61], cited with approval in *Hoff* v. *Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 939, fn. 7 [80 Cal.Rptr.2d 811, 968 P.2d 522].)

[4]Section 11164, subdivision (b) states: "The intent and purpose of this [act] is to protect children from abuse." Furthermore, authorities point out the most serious injuries and greatest numbers of deaths from child abuse occur to children three years of age and under. (Comment, *Reporting Child Abuse: When Moral Obligations Fail* (1983) 15 Pacific L.J. 189, 190, fn. 12.)

[5]When a demurrer is sustained without leave to amend, the question on appeal is whether the complaint states a cause of action under any legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].) For this reason, it is immaterial Alec did not specifically rely on subdivision (a) of section 11166 in his second amended complaint. Furthermore, both sides have argued the applicability of subdivision (a) in their appellate briefs so there is no bar to our considering its provisions in reversing the trial court's judgment. (Gov. Code, § 68081.)

known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident." (Italics added.) "Reasonable suspicion" for purposes of the statute means ". . . it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training or experience, to suspect child abuse." (*Ibid.*) A police department is a "child protective agency" for purposes of this statute. (§ 11165.9.)

As we read section 11166, subdivision (a), it imposes two mandatory duties on a police officer who receives an account of child abuse.

First, the statute imposes a duty to investigate. Although section 11166, subdivision (a) does not use the term "investigate," it clearly envisions some investigation in order for an officer to determine whether there is reasonable suspicion to support the child abuse allegation and to trigger a report to the county welfare department and the district attorney under section 11166, subdivision (i) and to the Department of Justice under section 11169, subdivision (a). The latter statute provides in relevant part: "A child protective agency shall forward to the Department of Justice a report in writing of every case it investigates of known or suspected child abuse which is determined not to be unfounded . . . . A child protective agency shall not forward a report to the Department of Justice unless it has conducted an active investigation and determined that the report is not unfounded, as defined in Section 11165.12." An "unfounded" report is one "which is determined by a child protective agency investigator to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse, as defined in Section 11165.6." (§ 11165.12, subd. (a).) "Child abuse" is defined in section 11165.6 as "a physical injury which is inflicted by other than accidental means on a child by another person."

The statute also imposes a duty to take further action when an objectively reasonable person in the same situation would suspect child abuse. Further action would entail reporting the "known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone" and preparing and sending "a written report thereof within 36 hours of receiving the information concerning the incident." (§ 11166, subd. (a).)

 Contrary to the city's position, the duty to investigate and report child abuse is mandatory under section 11166, subdivision (a) if a reasonable person in Officer Doe's position would have suspected such abuse. The

language of the statute, prior cases and public policy all support this conclusion.

The statute itself states an employee of a child protective agency (e.g., a police officer) "who has knowledge of . . . a child . . . whom he or she knows or reasonably suspects has been the victim of child abuse, *shall* report the known or suspected instance of child abuse[.]" (§ 11166, subd. (a), italics added.) In contrast to the imperative language used in subdivision (a), the Legislature provided in subdivision (f): "*Any other person* who has knowledge of or observes a child whom he or she knows or reasonably suspects has been a victim of child abuse *may* report the known or suspected instance of child abuse to a child protective agency." (§ 11166, subd. (f), italics added.) Comparing the obligatory language of subdivision (a) addressed to police officers and the permissive language of subdivision (f) addressed to the general public leads us to conclude the Legislature intended to impose a mandatory duty on police officers to investigate and report known or reasonably suspected child abuse.

There are sound public policy reasons for the Legislature's imposition of a mandatory reporting duty on police officers. Police officers, unlike ordinary citizens, are specially trained in the detection, investigation and response to cases of suspected child abuse. (§ 13517.) Moreover, police officers are in a unique position to discover cases of child abuse because the natural reaction of a relative, friend or neighbor who has observed signs of abuse is to call the police, just as Hector did here. The Child Abuse and Neglect Reporting Act contains an elaborate system for reporting and cross-reporting known and suspected cases of child abuse for the purpose of "protect[ing] children from abuse." (§ 11164, subd. (a).) This Legislative scheme is summarized in *Planned Parenthood Affiliates* v. *Van de Kamp* (1986) 181 Cal.App.3d 245, 257-260 [226 Cal.Rptr. 361] and we will not repeat it here. Suffice it to say, the whole system depends on professionals such as doctors, nurses, school personnel and peace officers who initially receive reports of child abuse to investigate and, where warranted, report those accounts to the appropriate agencies. If these professionals, including the police, simply ignore those reports, the Legislature's entire scheme of child abuse prevention is thwarted.

Case law too supports the conclusion the police have a mandatory duty to investigate and report accounts of child abuse.

In *Landeros* v. *Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324], our Supreme Court recognized civil liability under former section 11161.5 for a physician's failure to make a required report of

child abuse. The plaintiff, an 11-month-old girl, was taken by her mother to the defendant doctor for treatment of a leg fracture. The complaint alleged the fracture and other injuries from which the child was suffering at the time gave the appearance of having been intentionally inflicted. The mother had no explanation for the injuries. The defendant did not report the child's injuries to the local police or welfare department. After the defendant treated and released the child she suffered further beatings at the hands of her mother and the mother's common law husband. The complaint alleged the defendant doctor was liable for the child's subsequent injuries predicated on common law negligence for failure to diagnose and treat plaintiff's battered child syndrome and negligence per se for failure to comply with the child abuse reporting requirements of former section 11161.5. Section 11161.5 declared that when it "appears to the physician" a minor has been the victim of child abuse the physician "*shall* report such fact by telephone and in writing, within 36 hours . . ." to the local police or other appropriate agencies. (Stats. 1975, ch. 226, § 1, p. 608, italics added; *Landeros, supra*, 17 Cal.3d at p. 407.)[6] The court held allegations the defendant failed to make the report required by the statute supported an action for personal injury under the doctrine of negligence per se. (17 Cal.3d at p. 413.)

In our view, a physician's statutory duty to report when it "appears" to her a child has been subjected to abuse and a police officer's statutory duty to report when she "reasonably suspects" a child has been subjected to abuse are not rationally distinguishable for purposes of imposing liability under the negligence per se doctrine.

Our view is supported by the decision in *Planned Parenthood Affiliates* v. *Van de Kamp, supra*, 181 Cal.App.3d 245, 258-259, in which the court held section 11166, subdivision (a) "imposes a mandatory reporting requirement on individuals whose professions bring them into contact with children" and the Legislature "intends an investigation be conducted into every report received."

The city argues the burden on police departments would be intolerable if they were required to investigate and report every account of child abuse they receive, no matter how frivolous. But this is not what the child abuse reporting law requires. An officer is only required to investigate and report an account of child abuse when ". . . it is objectively reasonable for a person to entertain a suspicion, based upon facts that could cause a reasonable person in a like position, drawing, when appropriate, on his or her training or experience, to suspect child abuse." (§ 11166, subd. (a).) An

---

[6]Section 11161.5 was subsequently repealed. A physician's reporting duty is now imposed by section 11166, subdivision (a) along with that of a police officer and other professionals.

officer is specifically directed not to pass on an "unfounded report," i.e., one which he or she determines to be false, inherently improbable, to involve only an accidental injury, or not to constitute child abuse as defined by statute. (§ 11165.12, subd. (a).) Given these statutory guidelines and the training in child abuse investigation afforded police officers (§ 13517), it is not unfair or against public policy to impose a mandatory duty on officers to comply with the investigation and reporting requirements of section 11166, subdivision (a).

The city also argues before we can hold its officer owed a mandatory duty to Alec we must be able to say, as a matter of law, the breach of that duty was the proximate cause of Alec's injuries, citing *Novoa* v. *County of Ventura* (1982) 133 Cal.App.3d 137, 144-145 [183 Cal.Rptr. 736].) We reject this argument. Causation is a question of fact (see discussion in pt. B *post*), and nothing in *Novoa* changes that well-established rule. What the court said in *Novoa* was that if the mandatory duty at issue is not designed to protect against the kind of injury alleged in the complaint then the injury " 'is not proximately caused by the failure to perform the mandatory duty.' . . ." (133 Cal.App.3d at p. 145, citation omitted.) Here, it is indisputable that the mandatory duty to investigate and report accounts of child abuse was intended to "protect children from child abuse." (§ 11164, subd. (a).) The complaint in the case before us alleges that despite Hector's account of Alec's abuse, Officer Doe performed no investigation and made no report and, as a result, Alec suffered further abuse. Therefore, the necessary linkage between the mandatory duty and the injury is established for pleading purposes.

The failure to investigate was clearly a breach of duty. Whether a reasonably prudent person receiving Hector's information would suspect child abuse and make a report is a question of fact to be determined at trial. We cannot say from the facts pled in the complaint that as a matter of law no reasonable person could form a suspicion of child abuse. In *People* v. *Green* (1997) 51 Cal.App.4th 1433 [59 Cal.Rptr.2d 913], for example, the police received an anonymous report the defendant was hitting two children in the front seat of a vehicle. Although the defendant was ultimately convicted on other charges, the Court of Appeal noted in its opinion: "Given the information possessed by the police, the officers had a duty to investigate the report of child abuse" citing section 11164 et seq. (51 Cal.App.4th at p. 1438.) The facts indicating child abuse are even stronger in the present case. Here, Alec's father reported he recently had seen Alec with a black eye, which neither Alec nor his mother could satisfactorily explain. He also related the fact that, according to Alec's neighbor, Alec had just received another beating from Gonzalez and this same neighbor had also observed Alec's

earlier black eye. The fact the neighbor had seen signs of Alec's earlier abuse lent credibility to the neighbor's report of current abuse.

For these reasons, we conclude the complaint adequately pled the violation of a statutory duty.

### B. *Whether Officer Doe's Negligence Was a Cause of Alec's Injuries Is a Question of Fact Which Cannot Be Resolved at the Pleading Stage.*

█ In order to recover under any negligence theory, the plaintiff must be able to allege and ultimately prove the defendant's breach of duty proximately caused the injury. Although normally the issue of causation is a question of fact and therefore not within the scope of a demurrer, the court may properly examine the proximate cause of the alleged injury at the demurrer stage. *(Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588, 590-591 [114 Cal.Rptr. 332].) █ The city contends the complaint in this case shows on its face the proximate cause of Alec's injury was not Officer Doe's failure to investigate or report child abuse but rather the criminal acts of Gonzalez who administered the beatings. The city further contends as a matter of law the connection between Officer Doe's alleged failure to investigate or report the abuse of Alec and Alec's subsequent injuries is too conjectural or speculative to support a cause of action for negligence. We disagree with both of these arguments.

We reject the city's contention Gonzalez's abuse of Alec can properly be considered an intervening or superseding cause which broke the chain of causation with respect to Alec's injuries.

In *Landeros*, the court found subsequent beatings by the plaintiff's mother and her common law husband did not necessarily relieve a doctor from liability for his negligent failure to diagnose, treat and report to the proper authorities plaintiff's battered child syndrome. (17 Cal.3d at p. 411.) Although the subsequent beatings were the immediate cause of the plaintiff's injuries, the court held an intervening act "does not amount to a 'superseding cause' relieving the negligent defendant of liability if [the intervening act] was reasonably foreseeable." *(Ibid.)* Quoting from section 449 of the Restatement Second of Torts the court stated: " 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, *or criminal* does not prevent the actor from being liable for harm caused thereby.' " (17 Cal.3d at p. 411, italics added.)

Applying these rules to the case before it, the *Landeros* court noted child abuse is generally not an isolated, atypical event "but part of an environmental mosaic of repeated beatings and abuse that will not only continue but

will become more severe unless there is appropriate medicolegal intervention." (17 Cal.3d at p. 412, fn. omitted.) Therefore, the court concluded, it was error for the trial court to rule as a matter of law defendant's negligence was not the proximate cause of plaintiff's injuries. Rather, "[p]laintiff is entitled to prove by expert testimony that defendants should reasonably have foreseen that her caretakers were likely to resume their physical abuse and inflict further injuries on her if she were returned directly to their custody." (*Ibid.*, fn. omitted.)

In the present case, the complaint alleges Officer Doe negligently failed to investigate and take further action after receiving a credible report of child abuse from the child's father. Assuming Gonzalez's future criminal conduct was the foreseeable result of Alec remaining in his custody—a question of fact for the jury—Officer Doe and the City of Alhambra are not relieved of liability by a superseding cause of injury.

We now turn to the city's contention Alec cannot establish that but for Officer Doe's failure to investigate or report past instances of child abuse future abuse would have been prevented. The city asserts whether an investigation or report would have prevented future abuse of Alec by Gonzalez is purely speculative because it is unknowable what child welfare workers would have done with Officer Doe's report had it been made.

The city relies on *Antique Arts Corp.* v. *City of Torrance, supra*, 39 Cal.App.3d 588, a case in which the court found no governmental liability for a police dispatcher's 10-minute delay in broadcasting a robbery-in-progress call. The court observed: "Whether the immediate presence of police on the scene of a robbery could have prevented it and/or resulted in the recovery of the loot after the consummation of a robbery, or whether immediate police response to a concurrent transmission of the alert could have prevented the robbery or recovered the loot is a subject replete with speculation and conjecture." (*Id.,* at pp. 590-591.) Therefore, ". . . the presence or absence of police before, during or after the robbery has in our opinion no such causal or proximate connection with a loss resulting from a consummated robbery as to result in government liability." (*Id.,* at p. 591.)

The city's reliance on *Antique Arts* is misplaced. Unlike police officers responding to a robbery report, welfare workers responding to a child abuse report are governed by statutory standards. Welfare and Institutions Code section 16501, subdivision (f) provides when a county welfare department receives a report of child abuse under section 11166 it "shall respond to any report of imminent danger to a child immediately and all other reports within 10 calendar days." In Alec's case, the subsequent beating took place six

weeks after his father's report of child abuse. Thus, the county welfare department would have had ample time to respond and provide Alec with protection from further abuse had Officer Doe reported the facts related by Alec's father.

An additional factor weighs in Alec's favor on the causation issue. As previously mentioned, the Legislature's declared intent and purpose in enacting the Child Abuse and Neglect Reporting Act was "to protect children from abuse." (§ 11164, subd. (a).) Obviously the Legislature believed compliance with the investigating and reporting requirements of the act would be a substantial factor in preventing child abuse. Conversely, the failure to investigate or report occurrences of child abuse greatly enhances the chances of repeated and more severe abuse, as discussed in *Landeros* v. *Flood, supra,* 17 Cal.3d at p. 412.)

The Supreme Court, in *Landeros*, held the plaintiff was entitled to prove by way of expert testimony a reasonably prudent physician would have reported plaintiff's injuries to the proper authorities. (17 Cal.3d at p. 410.) Taking this holding the next logical step, we believe Alec is entitled to prove by way of expert testimony a reasonably prudent social worker would have responded to the alleged facts of his abuse in a way which would have prevented his subsequent injuries. Considering the allegations set forth in the complaint, such as the physical abuse suffered by Alec, his black eye and the drug use by his mother and Gonzalez, it is not difficult to believe the county welfare department would have taken affirmative steps to protect Alec. Whether or not the department would have done so is not a matter of speculation but a question of fact to be determined at trial through expert testimony.

For these reasons, we cannot say at the pleading stage of this case Alec is unable to establish future abuse would have been prevented by a proper investigation and report on the part of the Alhambra Police Department and Officer Doe.

## II. *Neither the City Nor Officer Doe Is Immune From Liability.*

██ Despite the mandatory language of section 11166, subdivision (a), the city contends it is immune from liability because as a matter of public policy the investigation of child abuse should be treated as a discretionary

act and because a city cannot be held liable for its employees' failure to enforce a law.[7] We find no merit in either of these arguments.

In arguing investigation of child abuse should be treated as a discretionary act as a matter of public policy, the city relies on *Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869 [271 Cal.Rptr. 513] (*Alicia T.*)). *Alicia T.*, however, is clearly distinguishable from the present case.

*Alicia T.* was an action against a county and two of its social workers by the parents of a child whom defendants removed from the home due to suspected child abuse reported by a hospital. The case did not involve any claim of liability under the Child Abuse and Neglect Reporting Act. Indeed, the plaintiffs conceded "the personnel at [the hospital] properly reported the suspicion of abuse to the sheriff's department." (222 Cal.App.3d at p. 877.) Liability in *Alicia T.* was sought under 42 United States Code section 1983 on the theory the county removed Alicia from her home and prevented her return without sufficient probable cause. (222 Cal.App.3d at p. 880.) In holding social workers enjoy absolute immunity from liability for removing a child from the parents' home, the court noted the important societal function played by social workers in this context. Social workers, the court explained, must make quick decisions on incomplete information as to whether to remove a child from parental custody. Therefore, granting social workers anything less than absolute immunity would " 'negate the purpose of child protective services by postponing prevention of further abuse to avoid liability.' " (*Id.* at p. 881, quoting from *Jenkins* v. *County of Orange* (1989) 212 Cal.App.3d 278, 287 [260 Cal.Rptr. 645].)

In our case, statutory liability is pled under section 11166, subdivision (a) which establishes a mandatory duty on employees of child protective agencies, including police officers, to investigate and take further action when warranted. Unlike the discretion afforded the social workers who responded to the sheriff's report of suspected abuse in *Alicia T.*, there is no discretion involved in initiating the investigating and reporting process itself. (See discussion in pt. I, *ante.*) Officer Doe had a mandatory duty to investigate

---

[7]Government Code section 815.2, subdivision (b) states: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Government Code section 820.2 states: "[e]xcept as otherwise provided by statute a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Government Code section 818.2 provides: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."

Government Code section 821 provides: "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment."

and then report if it was objectively reasonable for him to suspect child abuse.

The city next argues Government Code sections 818.2 and 821 relieve it and Officer Doe, respectively, of any liability for the failure to enforce a law. However, "[t]he statutes declaring immunity for damages caused by law enforcement failures encompass only discretionary law enforcement activity [citation]." (*Roseville Community Hosp.* v. *State of California* (1977) 74 Cal.App.3d 583, 587 [141 Cal.Rptr. 593], and see cases cited therein.) The immunity statutes do not bar liability for breach of a mandatory law enforcement duty. (*Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 916-917 [136 Cal.Rptr. 251, 559 P.2d 606].) As explained above, this case does not involve the exercise of discretion on the part of Officer Doe or a failure to enforce the law, but rather a failure to comply with a mandatory duty imposed by law.

We conclude, therefore, the allegations in the complaint do not give rise to a defense of sovereign immunity on the part of the city.

### DISPOSITION

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. Appellant is awarded costs on appeal.

Lillie, P. J., and Woods, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 23, 2000.