[No. E045242. Fourth Dist., Div. Two. June 5, 2009.]

P.S., a Minor, etc., et al., Plaintiffs and Appellants, v.
SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

M.A., a Minor, etc., et al., Plaintiffs and Appellants, v.
SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

C.R., a Minor, etc., et al., Plaintiffs and Appellants, v.
SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

M.V., a Minor, etc., et al., Plaintiffs and Appellants, v.
SAN BERNARDINO CITY UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

954

## COUNSEL

Shernoff, Bidart, Darras & Echeverria, Michael J. Bidart, Gregory Bentley, Steven M. Schuetze; Girardi & Keese, Thomas V. Girardi and V. Andre Rekte for Plaintiffs and Appellants.

Cummings, McClorey, Davis, Acho & Associates and Sarah L. Overton for Defendant and Respondent.

## OPINION

**MILLER, J.**—Plaintiffs and appellants P.S., M.A., C.R., and M.V. were first grade pupils in the Central School District. They were victims of molestation by Eric Norman Olsen, a substitute teacher. They each filed suit, alleging causes of action for negligence, negligence per se, and negligent infliction of emotional distress. In addition to naming Olsen and Central School District (where the plaintiffs attended school and which had hired Olsen as a substitute teacher), plaintiffs also named as defendants the Chino Valley Unified School District,[1] defendant and respondent San Bernardino City Unified School District (SBCUSD), the Ontario-Montclair School District, the San Bernardino County Department of Children's Services, and the San Bernardino County Superintendent of Schools, on the theory that these entities had failed in a mandatory statutory duty to report suspected child abuse when Olsen had worked as a substitute teacher in other districts. Defendant and respondent SBCUSD demurred to each complaint on the ground that the Child Abuse and Neglect Reporting Act (the Reporting Act; Pen. Code, § 11164 et seq.) did not impose a duty on them toward these plaintiffs. The trial court sustained the demurrers without leave to amend as to all three causes of action against SBCUSD. Plaintiffs appeal as to the negligence and negligence per se causes of action; they do not contest the ruling as to the cause of action for negligent infliction of emotional distress. We affirm the judgment of the trial court.

### FACTUAL AND PROCEDURAL HISTORY

Because the matter arises on demurrer, we draw our factual statement from the pleadings, accepting as true the properly pleaded material facts alleged. The complaints in each of the four cases are substantially the same, and involve the same issues. P.S.'s action will serve as an adequate exemplar of the facts, contentions, issues and procedural history applicable to each of the four plaintiffs.

---

[1] Plaintiffs' action as to the Chino Valley Unified School District resulted in a separate appeal, raising the identical issue decided here. (See *P.S. v. Chino Valley Unified School Dist.* (June 5, 2009, E045666) [nonpub. opn.].)

In December 2005, P.S. was a first grade student at a school within the Central School District in Rancho Cucamonga. Olsen was a substitute teacher in P.S.'s class, and Olsen engaged in incidents of unlawful touching of P.S., including having P.S. sit on his lap, for the purpose of Olsen's sexual arousal or gratification.[2]

The complaints alleged that, in 2004, Olsen was a substitute teacher in a school in the Chino Valley Unified School District, when he had unlawful contact with a five-year-old girl. The Chino Valley Unified School District permanently banned Olsen from teaching in that district. The Chino Valley Unified School District reported Olsen to the San Bernardino County Superintendent of Schools.

In April 2005, Olsen had unlawful contact with a student in the SBCUSD. The alleged conduct included allowing children to sit on his lap. The SBCUSD permanently banned Olsen from teaching in that district.

The complaints alleged that "[o]n or about 2004 or 2005 . . . Olsen engaged in inappropriate and improper conduct in the Ontario Montclair School District," but provided no further details.

The first cause of action, for negligence, alleged that Olsen negligently, carelessly, recklessly and inappropriately fondled plaintiffs, and that the Central School District, where plaintiffs were pupils, failed to properly investigate Olsen's background, and negligently hired and supervised him.

As to the other school districts and agencies, the negligence cause of action alleged that the Reporting Act requires certain persons (mandated reporters) to make a report whenever the person has knowledge of, observes, or reasonably suspects a child has been a victim of abuse or neglect. The other school districts and agencies, including SBCUSD, allegedly failed to report

---

[2] As to P.S., the complaint alleged that Olsen "engaged in unlawful and/or improper and [sic] physical contact with P.S., including, but not limited to having P.S. sit on his lap on several occasions throughout the day in front of other students and inappropriately touching P.S."

M.A.'s complaint alleged that Olsen "engaged in unlawful and/or improper physical contact with M.A., including, but not limited to having M.A. sit on his lap for an extended period of time in front of other students, touching and rubbing M.A.'s upper thigh, and placing his hand under her shirt and touching her lower abdomen."

C.R.'s complaint alleged that Olsen "engaged in unlawful and/or improper and [sic] physical contact with C.R., including, but not limited to having C.R. sit on his lap on several occasions throughout the day in front of other students and lifting C.R.'s skirt and rubbing her thighs."

M.V.'s complaint alleged that Olsen "engaged in unlawful and/or improper physical contact with M.V., including, but not limited to having M.V. sit on his lap for an extended period of time in front of other students, touching and rubbing and placing his hand under her shirt and touching her lower abdomen."

Olsen to the proper authorities under the Reporting Act. This failure allowed Olsen to continue working as a substitute teacher in other districts, which caused plaintiffs' harm.

The second cause of action, for negligence per se, was alleged against the Central School District, as well as the prior school districts and agencies, including SBCUSD, for alleged violation of the statutory duty of reporting under the Reporting Act. As to SBCUSD in particular, the pleadings alleged that "[e]mployees of the [SBCUSD] . . . who were Mandated Reporters negligently failed to comply with their statutory duties to report Olsen's conduct which occurred in the [SBCUSD] on or about April 2005 which they knew or suspected to be inappropriate to the specified authorities as required by Penal Code § 11164 et seq." The pleadings further alleged that defendants, including SBCUSD, had negligently failed to train, educate and instruct its personnel in the reporting requirements of the Reporting Act. As a result of these failures to report, "other school districts and authorities were not alerted of Olsen's inappropriate conduct and propensities," which in turn allowed Olsen to continue substitute teaching and thus to continue perpetrating unlawful acts on children, including plaintiffs.[3]

SBCUSD demurred to the complaints. SBCUSD argued that the complaints failed to state facts sufficient to state a cause for liability against it, that SBCUSD had governmental immunity against the action, and that the alleged source of the statutory violation to support the negligence per se cause of action, i.e., the Reporting Act, did not include plaintiffs in the class of persons protected by the statute. (*Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066 [60 Cal.Rptr.2d 263, 929 P.2d 582] (*Randi W.*).)

Plaintiffs opposed the demurrers, arguing that they had pled sufficient facts to state a proper cause of action, that governmental immunity did not apply, and that amendments to the Reporting Act (Pen. Code, § 11164 et seq.)[4] had abrogated the holding in *Randi W.*

SBCUSD responded that the amendments to the Reporting Act contained no indication of an intent to abrogate *Randi W.*, which therefore remained a controlling precedent.

The trial court requested further briefing on the amendments and their alleged effect on *Randi W.*, including "perhaps a side-by-side comparison to see what the language was in 1997 and how it was changed." After further

---

[3] As noted, plaintiffs do not appeal from the ruling as to the third cause of action for negligent infliction of emotional distress. Therefore, no description of the allegations of that cause of action is included here.

[4] All further statutory references will be to the Penal Code unless otherwise indicated.

briefing, the court ruled that the amendments were not intended to abrogate *Randi W.*'s holding that future victims were not within the class of persons intended to be protected by the statute. The court therefore sustained the demurrers without leave to amend as to both the negligence and the negligence per se causes of action, on the theory that SBCUSD did not owe a duty of care to these plaintiffs. A judgment of dismissal was entered in due course and plaintiffs have appealed.

## DISCUSSION

### A. *Standard of Review*

"A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal. [Citations.] [¶] The complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] . . . [¶] Where a demurrer is sustained without leave to amend, the reviewing court must determine whether the trial court abused its discretion in doing so. [Citation.] It is an abuse of discretion to deny leave to amend if there is a reasonable possibility that the pleading can be cured by amendment. [Citation.]" (*Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 321–322 [102 Cal.Rptr.2d 13].)

While we accept all properly pleaded allegations of material fact, a demurrer does not admit deductions, contentions, or conclusions of law or fact. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

The crux of this case is the proper interpretation of section 11164 et seq., and most particularly the 2000 amendments to the Reporting Act, together with the California Supreme Court's ruling in *Randi W., supra,* 14 Cal.4th 1066. Questions of statutory construction, and consideration of the legislative history of the amendments, raise issues of law which we review de novo. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].)

### B. *The Trial Court Properly Sustained the Demurrers Without Leave to Amend*

#### *Randi W.*

Plaintiffs were not students of SBCUSD at the time the alleged molestations took place. At the time of the incidents, SBCUSD had not hired and was not supervising Olsen in his capacity as a substitute teacher.

In *Randi W.*, a minor plaintiff, like the plaintiffs here, sued her own school district and other school districts after she was molested by a vice-principal. The other school districts had formerly employed the vice-principal and had written letters recommending the vice-principal for employment, without disclosing his history of sexual wrongdoing. The plaintiff alleged six causes of action: negligence, negligent hiring, negligent misrepresentation, fraud, negligence per se for violating the Reporting Act (§ 11164 et seq.), and sex discrimination. (*Randi W., supra*, 14 Cal.4th at pp. 1066, 1071–1072.)

The prior employer school districts demurred to the complaint, and the trial court sustained the demurrers as to all causes of action on the ground that there was no duty running from the prior employer school districts to the plaintiff. (*Randi W., supra*, 14 Cal.4th at p. 1074.) The Court of Appeal affirmed as to the negligence, negligent hiring and sex discrimination counts, but reversed as to negligent misrepresentation, fraud, and negligence per se. (*Ibid.*)

The plaintiff did not seek review as to the affirmed counts (negligence, negligent hiring, sex discrimination), but the prior employer school districts did seek review of the reversed counts (negligent misrepresentation, fraud, and negligence per se).

The Court of Appeal had held, with respect to the negligent misrepresentation and fraud counts, that the prior employer school districts had made misleading representations as to the vice-principal's qualifications by intentionally suppressing information about his prior sexual contact with students. The Court of Appeal had also held that the complaint stated a cause of action for negligence per se, because the prior employer school districts had allegedly failed in their statutory duty to report the vice-principal under the Reporting Act (§ 11164 et seq.). (*Randi W., supra*, 14 Cal.4th at pp. 1074–1075.)

The California Supreme Court granted review, and analyzed the reversed counts. As to the negligent misrepresentation and fraud counts, the court undertook an extensive analysis of duty under the factors set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]. Although there was no special relationship between the prior employer school districts and the plaintiff, who was not a student in any of those districts, she was a third party who alleged that she was put in peril by the hiring school district's reliance on the prior employer school districts' representations.

The injury to the plaintiff in *Randi W.* was a foreseeable consequence of the misrepresentations (unqualified recommendation of the vice-principal, while saying nothing about his sexual misconduct), which induced the

plaintiff's home district to hire the vice-principal, thus placing him in a position to injure the plaintiff. The court further considered whether moral blame attached to the prior employer school districts' unreserved recommendations, coupled with the failure to disclose facts necessary to avoid or minimize risk of further child molestations or abuse. Although insurance might be available for negligent misrepresentations, it would not be available for fraud or intentional misconduct, and the prior employer school districts had alternative courses of action available to them: They could have made complete disclosures, or they could have issued a "no comment" letter. Considerations of public policy weighed both for (public policy of protecting children from molestation or abuse) and against (imposing liability for recommendation letters would inhibit employers from giving any recommendations at all) imposing liability, but at a minimum, the writer of a letter of recommendation owes a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if the misrepresentations present a substantial, foreseeable risk of physical harm.

The California Supreme Court concluded, therefore, that the plaintiff in *Randi W.* had sufficiently pleaded a duty owed to her by the former employer school districts, as well as actual misrepresentation or fraud (as opposed to mere nondisclosure), and reliance by the hiring school district, resulting in the plaintiff's damage. The causes of action for fraud and negligent misrepresentation therefore withstood the demurrers.

█ The cause of action for negligence per se was premised on the breach of the statutory duty under the Reporting Act (§ 11166). The California Supreme Court decided that it "need not decide whether the complaint's allegations are sufficient to allege defendants knew or suspected reportable 'child abuse,' because it is clear plaintiff was not a member of the class for whose protection the Reporting Act was enacted. Defendant school districts were never the 'custodians' of plaintiff, a Livingston student and, accordingly, owed her no obligations under the act." (*Randi W., supra*, 14 Cal.4th at p. 1087.) The court reasoned that, "[t]he duty to report under the Reporting Act [citation] applies to a 'child care custodian' (which would include a school district) 'who has knowledge of or observes a child, in his or her professional capacity or within the scope of his or her employment, whom he or she knows or reasonably suspects has been the victim of child abuse' (which includes sexual abuse). Reasonably construed, the [Reporting A]ct was intended to protect only those children in the custodial care of the person charged with reporting the abuse, and not all children who may at some future time be abused by the same offender. Plaintiff fails to allege that she was ever in defendants' custodial care, or even that defendants were aware that [the vice-principal] had molested *her*. [¶] To adopt plaintiff's contrary argument would impose a broader reporting obligation than the Legislature intended. Under plaintiff's interpretation of the Reporting Act, a child care

custodian that fails to report suspected child abuse affecting one child in its care or custody could be held liable, perhaps years later, to any other children abused by the same person, whether or not those children were within its custodial protection. Neither legislative intent nor public policy would support such a broad extension of liability." (*Ibid.*)

### C. *The Reporting Act and 2000 Amendments*

The Reporting Act was amended in 2000 to alter some of the language referring to "child care custodian" as a class of persons required to report suspected child abuse. Plaintiff seizes upon the amendment of this language and, adverting to the similar language in the analysis of the California Supreme Court in *Randi W.*, discerns an intent in the amendment to alter the result in *Randi W.*

The Reporting Act, as it existed when *Randi W.* was decided, contained several sections defining classes of persons required to report suspected child abuse. Former section 11165.7 defined a " 'child care custodian' " to include teachers, instructional aides, and other school personnel, youth recreation center personnel, daycare workers, and other persons who had regular contact with children in such settings. Former section 11165.8 defined " 'health practitioner[s]' " as another category of persons required to report suspected abuse. Former section 11165.9 covered "child protective agenc[ies]," former section 11165.10 covered film and photograph processors, former section 11165.11 covered licensing agencies, former section 11165.15 covered " 'child visitation monitor[s],' " former section 11165.16 covered firefighters, animal control officers and humane society officers, and former section 11165.17 covered clergy members, all as varying categories of persons who may have been subject to a reporting duty under the Reporting Act.

Former section 11166 contained the reporting duty itself: "(a) Except as provided in subdivision (b), any child care custodian, health practitioner, employee of a child protective agency, child visitation monitor, firefighter, animal control officer, or humane society officer who has knowledge of or observes a child, in his or her professional capacity or within the scope of his or her employment, whom he or she knows or reasonably suspects has been the victim of child abuse, shall report the known or suspected instance of child abuse to a child protective agency immediately or as soon as practically possible by telephone and shall prepare and send a written report thereof within 36 hours of receiving the information concerning the incident. . . ."

The 2000 amendment was enacted by Assembly Bill No. 1241 (1999–2000 Reg. Sess.) (Stats. 2000, ch. 916, § 16). The Legislative Counsel's Digest for the bill (which plaintiff attached to her supplemental memorandum of points

and authorities below) indicated that the Legislature intended to "reorganize and recast the list of specified persons who are required to report . . . and designate those persons as mandated reporters . . . ." (Legis. Counsel's Dig., Assem. Bill No. 1241 (1999–2000 Reg. Sess.).)

As indicated, the amendment deleted the separate sections for "child care custodians," "health practitioners," and the other categories of persons required to report suspected abuse. Instead, section 11165.7 was amended to contain a comprehensive list of all "mandated reporters," including all the persons formerly provided in the separate sections, e.g., teachers, instructional aides, classified school employees, administrators, day camp administrators, Head Start teachers, public assistance workers, peace officers, firefighters, physicians, psychologists, counselors, film and photograph processors, animal control officers, clergy members, and others.

As a consequence of the reorganization, section 11166, the reporting duty, was also recast: "(a) Except as provided in subdivision (d), and in Section 11166.05, a mandated reporter shall make a report to an agency specified in Section 11165.9 whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect. The mandated reporter shall make an initial report to the agency immediately or as soon as is practicably possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written followup report thereof within 36 hours of receiving the information concerning the incident. . . ."

### D. *Effect of Amendment*

■ " ' "The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. . . . The statute ' "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . ." ' . . . If the language of a statute is clear, we should not add to or alter it to accomplish a purpose which does not appear on the face of the statute or from its legislative history." Statutes must be harmonized, both internally and with each other.' [Citation]." (*Pasadena Metro Blue Line Construction Authority v. Pacific Bell Telephone Co.* (2006) 140 Cal.App.4th 658, 663–664 [44 Cal.Rptr.3d 556].)

In the deletion of the language, "child care custodian," plaintiff perceives an intent to undermine the holding of *Randi W.* The California Supreme Court stated that a "child care custodian's" duty to report was limited to those within its "custodial care." (*Randi W., supra,* 14 Cal.4th at p. 1087.) Thus, alteration of the language "child care custodian" to "mandated reporter" must have been intended to abrogate the limitation to those within the mandated reporter's "custodial care."

Plaintiff points also to a statement in the amending act that the changes to the Reporting Act were "not intended to abrogate the case of Alejo v. City of Alhambra (1999) 75 Cal.App.4th 1180 [89 Cal.Rptr.2d 768]." (Assem. Bill No. 1241 (1999–2000 Reg. Sess.) § 34.) Because there was no similar affirmative recitation with respect to *Randi W.*, i.e., that the Legislature did not intend to abrogate *Randi W.*, then it must be assumed that the new enactment *did* intend to abrogate *Randi W.*

■ We reject plaintiff's proffered interpretation of the amended Reporting Act. The trial court's analysis was correct: "the changes in the 2000 statute were meant only to consolidate the categories of individuals who are required to report into one code section that enumerated 37 specific categories of mandated reporters. But there was no substantive change in the categories of individuals and their duties. Many of the required reporters at the time *Randi W.* was written were not child care custodians, such as health practitioners, fire fighters and medical examiners. . . . There was a long laundry list. But the [L]egislature, when it first enacted the statute, had one group of child care custodian[s] and then another group of professionals. And I think the distinction you can see they were drawing, was the child care custodians were people who appeared to have some continuous contact in lieu of a . . . parent figure such as teachers who have extended contact with children at a time when parents aren't present. So they call those people child care custodians. The other people were professionals of the type such as law enforcement people, health care professionals and the like, who may have more incidental contact with children but, nonetheless, may be in a position to see or observe conduct or behavior or symptoms that indicate that the child is a victim of ongoing child abuse or neglect. . . . This must be remembered, this is a criminal statute and the [L]egislature, I think, was mindful of the fact that it had to be written with some degree of precision because these were duties placed upon individuals who were subject to criminal penalties for a violation of the law."

The Legislature itself described what it was doing as "reorganizing and recasting" existing provisions. The trial court agreed that "the categories appear substantially similar, if not identical, to the categories that have existed prior to the 2000 amendment. So it appears to the Court that the changes were really changes in form and not changes in substance, and the

Court does not find support for the proposition that the [L]egislature intended to adopt and incorporate [the *Randi W.* dissent's] concept of an expanded duty of tort liability into the amended statute. . . . [¶] . . . [¶] While the [L]egislature recasts, that was their term, the categories of reporters, it didn't change the portions of [section] 11166[, subdivision] (a) with respect to when a mandated reporter is required to report . . . . [I]n the version that existed in 1997, a designated reporter was required to report when they had knowledge of or observed a child, in his or her professional capacity or within the scope of his employment, whom he knows or reasonably suspects has been a victim of child abuse. The 2000 version says a mandated reporter shall make a report to an agency specified and so forth whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse. [¶] So under either version, . . . reporters are only required to report conduct within their knowledge or observation in their professional capacity or within the scope of their employment."

Precisely so. The crux of the holding in *Randi W.* did not hinge on the term "custodial care" or "child care custodian," as much as on the limitation of the duty to report what the person was in a position to observe, or to reasonably suspect, arising from contact with the child, which resulted from professional contact or observations made within the scope of the reporter's employment. Necessarily, the child intended to be protected is the child about whom the reporting party is in a position to observe or to know anything regarding known or suspected abuse or neglect. For this reason, *Randi W.* was not intended to extend an open-ended liability to all future children who might conceivably be harmed, even years later, for the failure to report suspected injury to one child within the knowledge and observation of the reporter.

Nothing in the 2000 amendment altered the nature or timing of the duty to report; the duty was still premised on the reporting party's observation of and access to the very child as to whom abuse could be reasonably suspected, and within the professional capacity of the reporting party.

 The specific mention, in the amendment, that it was not intended to abrogate *Alejo v. City of Alhambra, supra,* 75 Cal.App.4th 1180,[5] does not aid plaintiffs. Plaintiffs' argument that, because the Legislature did not expressly

---

[5] In *Alejo,* a parent had made a report to a police officer that the child might have been abused by the mother's boyfriend. The police officer, who was a mandated reporter under the Reporting Act, failed to make any investigation into the charge. The trial court sustained the city's demurrer to the complaint, finding no duty on the city's police agency to investigate a particular crime. The Court of Appeal reversed, holding that the complaint properly stated a cause of action for negligence per se under the Reporting Act. The Legislature intended to impose a mandatory duty on police officers under section 11166, subdivision (a), to investigate

abrogate *Randi W.*, then it necessarily must have intended to do so by implication, absurdly inverts the usual rules of statutory construction. "There are no express provisions in the 2000 amendment which would abrogate *Randi W.*, nor is there any legislative historical background which supports such an argument." Quite simply, nothing in the amendment indicates any legislative intent whatsoever to extend a duty or to create liability to all future children who might be harmed by a suspected abuser.

## DISPOSITION

The judgment of dismissal is affirmed. Costs on appeal are awarded to defendant and respondent SBCUSD.

McKinster, Acting P. J., and Gaut, J., concurred.

---

and report known or reasonably suspected child abuse. In that case, the officer's failure to investigate was clearly a breach of this duty.